UNION BUILDING COMPANY ET AL., PROSECUTORS, v. CITY OF NEWARK ET AL., DEFENDANTS.

Argued October 2, 1945—Decided November 15, 1945.

Before Justices CASE, BODINE and PERSKIE.

For the prosecutors, *Louis Hood* and *Hannoch & Lasser* (*Herbert J. Hannoch* and *Morris Weinstein*).

For the defendants, *Thomas L. Parsonnel.*

The opinion of the court was delivered by

BODINE, J. The writ brings up for review a second certificate of cost in the opening of Raymond Boulevard in Newark, the action of the city's auditor and governing body in certifying the cost, the propriety of the cost thus charged to the improvement, and the jurisdiction of the assessment commissioners to assess benefits against the prosecutors' properties upon the certificate before them. The prior certificate of cost dated June 10th, 1936, was reviewed by this court in behalf of the same prosecutors in *Union Building Co. v. City of Newark,* 129 *N. J. L.* 146. The court set aside the assessment proceedings in that case.

The ordinance authorizing the opening of the boulevard was adopted July 13th, 1932. The ordinance calls for a local improvement, and the cost was to be assessed against property specially benefited.

On August 8th, 1934, a supplementary ordinance was adopted, which, so far as pertinent, provided: "The cost * * * shall, to the extent of Three Hundred Thousand Dollars ($300,000), not be specially assessed upon property specially benefited by said improvement, anything in said ordinance to the contrary notwithstanding. The amount of such cost to be specially assessed upon property specially benefited by said improvement shall be Seven hundred thousand dollars ($700,000), or such part thereof as shall equal the benefits received by such property."

In 1936, the boulevard improvement was certified to be complete, and its cost was certified to the assessment commissioners. They filed their report in 1939. The Circuit Court confirmed the report as to all property owners except the present prosecutors and, as we have before noted, this court set aside that assessment proceeding as to present prosecutors. The judgment was entered October 6th, 1942. The cost of the improvement, as certified in 1936, was $527,440.28, of which amount under the ordinance above quoted, $300,000 was to be borne by the city as charged, and the balance of $227,440.28 would be assessed against property specially benefited, including prosecutor's lands.

Under the prior certificate of cost only six properties were charged to the boulevard improvement and only a portion of the cost of each property. The city, after the assessment was set aside, took no action until July 26th, 1944, when the governing body certified and referred to the assessment commissioners the certificate of cost now before us. By this certificate, the cost of the boulevard improvement is now stated to be $1,041,244.02. The amount to be assessed against the property specially benefited is $700,000, an increase of nearly half a million dollars over the previous certificate. The certificate charges all or part of the cost of forty-six properties instead of the partial cost of six properties. Further, interest

on the improvement is now the aggregate sum of $360,401.48 instead of the $90,389.02 used in the previous certificate.

Part of the history of the boulevard should be considered at this time.

·A part of the Morris Canal was in the City of Newark. After the canal was abandoned, the city acquired title to such portion as was situate within its bounds. The city then entered into a contract on December 11th, 1928, with the Public Service Co-ordinate Transport to lay out and construct along the canal property acquired and on other property acquired by it an electric railway. When the railway was complete, the Transport was to have the exclusive use and operation thereof for a term of fifty years with the option to renew.

On January 29th, 1930, pursuant to legislation, the city adopted an ordinance authorizing the issuance of $1,000,000 railway construction bonds. The total railway construction bonds authorized was $10,850,000. Substantially all were issued and the proceeds received by the city were approximately $10,850,000.

On February 18th, 1931, the city adopted an ordinance for the planning and widening of Academy Street. On November 9th, 1932, the costs of the Academy Street opening were submitted to the Board of Commissioners of Assessment for local improvement. The cost thus certified was $1,009,644.15. No report was ever filed. On September 6th, 1944, the previous action was rescinded.

In the office of the city auditor there are three accounts: (1) entitled "Raymond Boulevard Opening account," hereafter called Boulevard account; (2) "Academy Street Opening account," hereafter called Academy account; (3) "City Railway Construction account," hereafter called Construction account.

A few of the details of the purchase of properties referred to in the 1944 statement of cost will now be considered.

The Kresge Foundation property purchased pursuant to resolution October 10th, 1933, of the purchase price $110,500 was charged to the Construction account, the balance to the

Boulevard account. The price paid for the property was $350,000. The cost of the land was apportioned in accordance with the extent of users.

The old Post Office property. The city acquired an easement therein; now used for railway purposes. It also acquired by quit-claim, without cost, two tracts of land near the Academy Street widening and Raymond Boulevard improvement. The money paid to the United States was charged to the Construction account. However, when it came to the 1944 statement of costs, $125,060 was charged to the Boulevard account. It is to be noted that the city acquired the land for street purposes without cost and that the price paid to the government was first charged to the Construction account.

The Louis Beller property, $85,000 was paid for it, on April 21st, 1931, before the boulevard was authorized. This was charged to the Construction account. Here again, the cost was apportioned in accordance with the use made in the later statement.

On September 14th, 1931, the city directed the condemnation of 194-196 Washington Street. The total cost of this property, $107,386, was charged on the city books to the Construction account. The cost is now, in part, charged to the Boulevard account.

The city on September 16th, 1931, acquired 135-137 Halsey Street. This property was acquired for $325,000. On the 1944 statement the portion used by each improvement was charged to the respective accounts, although it was acquired long before the boulevard was authorized.

251-255 Plane Street. This property was acquired in May of 1931, the total cost being $44,000, first charged to the Construction account. The same sum was also charged to the Academy account. In the 1944 statement, the total cost is charged against the Boulevard account.

418-420 High Street. This property was acquired in August of 1930. The total cost was $40,000. This sum was charged to the Construction account and the Academy account. In the 1944 statement, a portion of the cost was charged to the Boulevard account.

147 Academy Street, purchased September 2d, 1930, was charged to the Construction and Academy accounts. Later, a portion of the cost is charged in the 1944 statement to the Boulevard account. The same course was pursued with respect to 107, 111-115, 117, 119-125, 129, 133-134, 137-139, 141, 143 and 145 Academy Street. These properties were all acquired before the boulevard was authorized.

The DeBevoise property was acquired in 1930 for $790,000. Originally the cost was charged to the Construction account. The same sum was also charged to the Academy account.

The purchase of 1416-1418 Raymond Boulevard was first charged to the Construction account. In the 1944 statement, a portion was charged to the Boulevard account.

Other properties acquired in 1931 and before the boulevard was authorized were charged to the Construction account, and in the 1944 statement a portion is charged against the Boulevard account.

The property at Washington and Morris Canal frontage was owned by the City of Newark, yet in the 1944 statement some part of the value of this property is charged against the Boulevard account.

The power house on the old Morris Canal was acquired in June of 1927. On the 1944 statement, there is charged against the Boulevard account a sum of money based on calculating the area of the parcel in square feet and evaluating the area at the average square foot paid by the city for nearby properties.

It was stipulated that "The total purchase prices of all said properties were paid out of funds received by the city from the sale of City Railway Construction bonds issued and sold by the city between January 29th, 1930, and July 11th, 1933.

"Thereafter on August 1st, 1934, the city issued and sold $2,000,000 of Street Opening Bonds to defray the city's share of the cost of various municipal projects. $300,000 of the proceeds of said bonds represented the city's share of the cost of the Raymond Boulevard Opening, as provided in the Raymond Boulevard Supplemental Ordinance adopted August

8th, 1934, and mentioned in paragraph 2 of this stipulation; and $635,000 of the proceeds of said bonds represented the city's share of the cost of the Academy Street Opening mentioned in paragraph 7 of this stipulation.

"In 1938 the city included in its budget for that year, appropriated, and raised by general taxation, an item captioned '$674,666.00 Due to Capital—Deficits and Statutory Expenses.' This latter item, in turn included an item captioned 'Local Improvements $573,825.66.' Said latter item in turn included:

| | |
|---|---|
| Academy Street Opening | $415,000.00 |
| Raymond Boulevard Opening | 129,692.00 |

Said last mentioned item was arrived at as follows:

| | |
|---|---|
| Cost of lands as set forth upon the 1936 Statement of Costs (Schedule C hereto attached), | $428,252.66 |
| Demolition of building | 210.00 |
| Cost of issuing bonds | 1,230.00 |
| Total | $429,692.66 |

Less:

| | |
|---|---|
| Amount representing City's share and previously obtained from bonds issued August 1, 1934 | $300,000.00 |
| | $129,692.66" |

The Raymond Boulevard improvement was undertaken and completed before the enactment of the Revised Statutes. The authority for assessing benefits is to be found in the fourteenth paragraph of *Pamph. L.* 1917, *ch.* 152, *art. XX, p.* 376, which provides as follows:

"Upon the completion of any local improvement, the board or body in charge thereof shall immediately notify the officer or board in the municipality that is charged with the duty of making the assessment for benefits, and request that a proper assessment be made on any lands or real estate that may have been benefited or increased in value by such improvement.

The board in charge of such improvement shall furnish to the assessing officer or board a statement showing in detail the cost of such improvement, which shall include [the cost of any land, real estate or right of way purchased or condemned in connection with the improvement], and also the cost of advertising, financing and inspecting the same and engineering expenses."

*R. S.* 40:56–24 substitutes for the words in brackets the following: "the cost of any real estate or interest therein purchased or condemned for such improvement."

Prosecutors contend that many of the properties certified to be part of the cost of the improvements were not purchased or condemned in connection with the Raymond Boulevard improvement. As we have seen many were purchased or condemned before that improvement was authorized and charged against other projects.

It is interesting to note that the entire cost of the first forty-four properties of the forty-six listed on the later certificate was paid out of funds obtained from the sale of bonds. The ordinance authorizing the bonds provides as follows: "no part of the cost of the improvements for which bonds are hereby authorized to be issued, has been or is to be specially assessed against property specially benefited thereby."

The last two properties above mentioned, as we have seen, were acquired by the city many years before the ordinance authorizing the boulevard.

The first certificate included the partial cost of six of the forty-six properties and charged $390,120. In 1944, the certificate for forty-six properties charges $683,074. The total cost of the forty-six properties was $2,815,795.50. The amount charged to the boulevard account was $390,120. The amount charged to the Construction account was $2,475,823.50 and to the Academy account $1,689,100. So the total charges on the city books for properties costing $2,815,795 paid for by the sale of bonds aggregates $4,561,515.50.

Forty-three of the properties, as we have noted, were acquired prior to July 13th, 1932. The then statutes authoriz-

ing the local improvements required the giving of public notice, and land owners in the vicinity were entitled to be heard concerning the improvement. If sufficient number of the owners of lands proposed to be assessed for benefits objected to the improvement it could not be undertaken. *Pamph. L.* 1917, *ch.* 152, ¶ 10, *p.* 375. It would, therefore, seem that the cost of properties acquired prior to the improvement ordinance could not be included in the assessment certificate. Certainly, had the property owners had knowledge that the cost of such properties previously acquired would be assessed against them for benefits they might have opposed the whole scheme. A municipality must proceed in accordance with its delegated power, and before it is authorized to make a local improvement it has no right or authority to go ahead and purchase property and pay for it out of undedicated funds and then charge the purchase price to other accounts and then alter its books. Not even a city may disregard all entries in its books and its bond ordinance and its previous action in order to assess property which it now conceives to have been benefited by its previous action.

The boulevard improvement could not be started until the ordinance therefor was duly adopted. There is no authority in the law for the inclusion of expenses incurred prior to the commencement of the work and long before an ordinance authorizing it had been passed. The Raymond Boulevard improvement was not authorized until an ordinance for its improvement was duly enacted, after notice. All the properties acquired prior thereto and charged against other improvements cannot lawfully be charged against that improvement. See *River Edge Homes* v. *River Edge,* 130 *N. J. L.* 376. Property acquired for one specific purpose cannot be charged against another project. Nor do we think authority need be cited that an improvement cannot be founded upon plans conceived by municipal officials. The municipal right to make improvements is vested by statute and that statute must be strictly followed.

Because of the view previously expressed, it is unnecessary to consider whether the cost of the properties has been inequi-

tably and arbitrarily computed. It is clear that sufficient has been said to show that there was no real basis for the second certificate. Further, we think that the statute requires prompt action. The delay of the city and its improper handling of the matter in the first instance has incurred an interest charge of $360,404.48 which is charged against this improvement. Whether any part of the interest charges can be properly included as cost of financing we need not determine, but the amount before us has no place in the certificate.

The assessment proceeding will, therefore, be set aside with costs.